# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAKE CHARLES DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 2:17-CR-00330-01** |
| **VERSUS** | **JUDGE ZAINEY** |
| **JAVIER MUNOZ (01)** | **MAGISTRATE JUDGE KAY** |

## RULING AND REASONS

Before the Court is a "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (Doc. 92). Defendant Javier Munoz complains that his retained attorney's representation fell below the standard of what is required to provide effective assistance of counsel. Mr. Munoz requests an evidentiary hearing and seeks to have the Court dismiss the charge against him.

Mr. Munoz asserts the following regarding his ineffective assistance of counsel claim:

(1) Counsel failed to properly investigate the state and federal charges;

(2) Counsel failed to file a motion to suppress based on the initial traffic stop;

(3) Counsel failed to file a motion to suppress based on the search itself;

(4) Counsel failed to provide effective assistance of counsel because the indictment did not state all of the elements of the crime charged;

(5) Counsel failed to properly test the drugs to determine the type of methamphetamine Defendant possessed.

Munoz informs the Court that he filed a motion to compel against his former defense counsel requesting the entire case file, and that the file he received did not contain a video

of the initial traffic stop. Thus, he contends that his attorney could not have reviewed the video because he did not have it. On that basis, Munoz is requesting an evidentiary hearing to determine if his attorney had possession of the video and if he reviewed it. For the reasons given below, the Court finds that an evidentiary hearing is not necessary.

CRIMINAL CONDUCT[1]

On September 9, 2016, as part of his assignment on the Combined Anti-Drug Task Force (CAT), Corporal Booth stopped a Silver 2014 Honda Accord with New Jersey license plates for improper lane usage and speeding. Defendant, Javier Munoz, was the driver of the vehicle and his son, Beljavier Rodriguez, was a passenger. Cpl. Booth asked Munoz for his driver's license, but because Munoz could not hear him due to passing traffic, Cpl. Booth asked Munoz to step out of the car.

Cpl. Booth asked Munoz numerous questions about his travels. Cpl. Booth asked Munoz if he and his son had driven from New Jersey. Munoz replied that they had gone to Houston to attend his daughter's birthday. When asked her age, Munoz replied, "14 years." Cpl. Booth observed Munoz's nervous behavior when he started asking questions about his daughter and the visit to Houston, specifically noting an unusual jerking movement of his left arm and some movement of his head.[2]

Cpl. Booth also questioned Rodriguez separately and observed that he was also nervous. Also indicative of his nervous behavior was Rodriguez'a unsolicited comments about himself. Cpl. Booth noted that Rodriguez supplied different answers to the questions

---

[1] Stipulated Factual Basis for Guilty Plea, Doc. 50-2.
[2] Defendant's exhibit, p. 4, Doc. 92-2.

he had previously inquired of his father, Munoz; of significance, Rodriguez stated that his sister was 23 years of age. Rodriquez later corrected himself to indicate that she was 22 years old. Another example was that Rodriquez told Cpl. Booth that they stayed in Houston 1 or 2 days, whereas Munoz told Cpl. Booth they had been in Houston 3 days.

After more exchanges between Cpl. Booth and Munoz and completing a check of Munoz's drivers' licenses, vehicle registration, and criminal histories, Cpl. Booth issued Munoz a warning notice of violation. Cpl. Booth asked Munoz if his daughter was in school to which Munoz replied, "yes." Cpl. Booth then asked Munoz why he did not make the trip to Houston over a weekend; Munoz responded that the weekend was too short.

Due to Munoz and Rodriguez's suspicious behavior, Cpl. Booth asked Munoz if he would give him written permission to search his vehicle to which Munoz replied "yes." Cpl. Booth presented Munoz a search and seizure form and asked him to read the form and sign it at the bottom. After Munoz read and signed the consent to search form, Cpl. Booth and another officer searched the vehicle. During their search the officers discovered a door panel under the vehicle's center console.

Cpl. Booth pried open the trap door panel and observed an after-market locking mechanism (electronic piston) which held it closed.[3] Based on his training and experience, Cpl. Booth suspected that the hidden compartment was used to smuggle and transport drugs, money, and firearms. Upon closer inspection, Booth observed a type of packaging that he recognized as packaging commonly used on clandestinely manufactured drugs. Cpl.

---

[3] *Id*. p.5.

Booth then arrested Munoz and Rodriguez and had their vehicle transported to the CAT office for further inspection and removal of the suspected narcotics.[4]

Cpl. Booth hotwired and opened the hidden compartment and retrieved two large professionally printed bags that appeared to be packages of Mexican candy labeled *Pelon Pelonetta Hot Intenso.*[5] Each of the candy packages contained 21 individually wrapped candy packages. Cpl. Booth opened one of the smaller candy packages and found that it contained a crystalline substance. Using a standard chemical field-test, the substance tested positive for methamphetamine.

The crystalline substance was subsequently tested by a forensic chemist at the South Central Regional Laboratory of the Drug Enforcement Administration who weighed, analyzed and identified it as a mixture or substance containing methamphetamine with a combined total weight of 1935 grams.

In his Stipulated Factual Basis for Guilty Plea, Munoz stipulated to the fact that he "knowingly possessed the methamphetamine that was in the hidden compartment of his Honda and was transporting it with the intent to deliver the substance to another person or persons in New Jersey."[6] He also agreed that he was "responsible for possessing with the intent to distribute a quantity of methamphetamine (actual) with a net weight at least 1.5 kilograms, but less than 2 kilograms."[7]

---

[4] *Id.*
[5] *Id.*
[6] Guilty Plea, p. 5, Doc. 50-2.
[7] *Id.*

## **PROCEDURAL HISTORY**

On December 14, 2017, Munoz was charged with one count of possession with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. § § 841(a)(1) and 841(b)(1)(A).[8] On March 21, 2018, Munoz pleaded guilty to Count 1 of the Indictment.[9]

Munoz was sentenced to 165 months' imprisonment to be followed by five (5) years of supervised release.[10] The sentence fell within the advisory guideline range of 151-180 months.

Munoz timely appealed his sentence arguing that the District Court abused its discretion in sentencing him to 165 months of imprisonment. The Fifth Circuit affirmed the District Court, *per curium*. Munoz did not file a *writ for certiorari*; he subsequently filed the instant § 2255 motion which is now before the Court.

## **LAW AND ANALYSIS**

The Sixth Amendment right to counsel is the right to the effective assistance of counsel. The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on an ineffective assistance of counsel claim under the *Strickland* standard, a petitioner must show (1) counsel's performance was deficient, in that it fell below an objective standard of reasonableness, and (2) the deficient performance

---
[8] Doc. 1.
[9] Doc. 48.
[10] Doc. 69, 70.

prejudiced him. *Id.* at 687. The court need not address the two *Strickland* prongs in any particular order, and the defendant's failure to satisfy one means the court need not consider the other. *Id.*

"Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. A Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 669. "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Harrington v. Richter,* 562 U.S. 86, 110 (2011).

To show prejudice, the defendant must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* The court must consider the totality of the evidence. *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

*Counsel properly investigated the state and federal charges*

Munoz claims ineffective assistance of counsel due to his counsel's alleged failure to investigate his case properly. Munoz specifically complains of his counsel's failure to (1) reasonably investigate the initial traffic stop, and (2) reasonably investigate the consensual search. Munoz argues that the search went far beyond his consent to search.

After receiving and reviewing his case file, Munoz suggests that his former counsel did not ask, nor review the video of the initial traffic stop which led to the search. Munoz cites *Kimmelman v. Morrison*, 477 U.S. 365 (1986) to support his argument. In *Kimmelman*, defense counsel failed to timely file a motion to suppress because he had conducted no pretrial discovery, and thus as of the first day of trial, he was unaware of the search and seizure. Such a failure to conduct any discovery was found to be unreasonable and contrary to prevailing professional norms.

Munoz further complains that counsel did not interview Cpl. Booth or Sgt. Desormeaux as to the initial traffic stop. Munoz remarks that counsel sent him a letter advising that he needed to depose the officers, but according to the case file, the interviews never occurred. Hence, Munoz argues that failure to review the video of the initial traffic stop and depose the officers shows that counsel's representation fell below an objective standard of reasonableness. Munoz asserts that the video would have shown that the initial traffic stop was a pretext to search a car with out-of-state plates, and that his counsel should have looked at racial profiling. He further suggests that had his counsel reviewed the video, he would have been able to show that the traffic stop was unlawful, and his counsel should have filed a motion to suppress based on the alleged unlawful stop.

Munoz argues that a review of the video would have shown that the search of his car, even though consensual, went beyond the consent he had given at the time. Munoz argues that Cpl. Booth's issuance of only a warning indicates that he must have believed that the video would not have shown beyond a reasonable doubt that a violation had occurred.

7

The Government maintains that Munoz's claims are without merit because they are either not supported by facts or factually rebutted by the record. First, Munoz does not explain how an interview of the officers would supply any additional information that would be favorable to his case. Additionally, the Government argues that *Kimmelman* does not apply to the facts of the instant case. The trial court record makes clear that discovery materials were made available to defense counsel, and Munoz's attorney reviewed the information provided and considered a motion to suppress. On February 16, 2018, the Assistant United States Attorney sent defense counsel discovery material which included four (4) DVDs.[11] As pointed out by the Government, defense counsel filed a motion for an extension of time to review the "voluminous discovery responses" received in order to determining "whether various motions need to be filed, including a motion to suppress."[12] The record further reflects that a motion to suppress was being considered, and the Court entertained setting it for hearing.[13] Furthermore, the deadline to file same was extended to 3/23/2018.[14] The Court also notes that Munoz signed his plea agreement on 3/12/2018, prior to the deadline for the motion to suppress.[15]

Munoz's claim that defense counsel did not ask nor review the video is entirely speculative and without any factual basis; additionally, there is no merit to his claim that failing to depose the officers was unreasonable.

---

[11] Government's exhibit 1, Letter dated 2/16/2018, Doc. 95-1.
[12] Doc. 30, p.1, ¶ 2. Unopposed Motion to Extend Deadline for Filing Motions dated 2/22/18.
[13] See Minute Entry Doc. 36 setting hearing for 3/21/18; see Electronic Minute Entry Doc.41 resetting deadline for motion to suppress for 3/23/2018.
[14] Doc. 41.
[15] Doc. 50.

*Failing to file a motion to suppress was not unreasonable*

"[T]he exclusionary rule prohibits the introduction at trial of all evidence that is derivative of an illegal search, or evidence known as the 'fruit of the poisonous tree.'" *United States v. Heranandez*, 670 F.3d 616, 620-21 (5th Cir. 2012). Where a defendant claims counsel performed ineffective assistance of counsel by failing to litigate a motion that seeks to exclude evidence under the Fourth Amendment, he must prove that such a claim is meritorious in addition to there being a reasonable probability that the verdict would have been different absent the excludable evidence. *Kimmelman,* 477 U.S. at 375.

When a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370 (1985). In other words, Munoz would have to show that he would have been better off going to trial. In so doing, the Court must determine whether Munoz's counsel provided ineffective assistance by failing to file a motion to suppress before advising Munoz regarding the plea.

Munoz argues it was unreasonable for defense counsel to not file a motion to suppress because (1) the initial stop was illegal, and (2) the search went beyond his consent to search.

Munoz maintains that the initial traffic stop was a pretext to search the car because Munoz was Spanish and had out-of-state plates; thus, it was an illegal traffic stop. Cpl. Booth reported that he stopped Munoz because he was driving 76-78 mph in violation of

the 70-mph speed limit, and because he was driving outside of his lane of traffic. Both of these infractions violate the law. Munoz's statement that Cpl. Booth was profiling him, is conclusory, as he offers no evidence to support this contention.[16] Consequently, the Government argues that a motion to suppress for an illegal stop would have been futile. The Court agrees that the traffic stop was not illegal.

Munoz also maintains that the search which included the hidden compartment and opening the bags of candy went beyond his consent to search his vehicle. First, Munoz complains that Cpl. Booth "fraudulently disguised another citation warning and after the signing, explained that it was a consent to search."[17] Munoz argues that he was not aware at the time of the search, that he could revoke the consent and leave the scene.[18] In addition, Munoz asserts that his plea was not knowing and voluntary because his attorney instructed him "to agree to all the facts in his plea because he was going to get a below-guideline plea."[19]

Munoz complains that Cpl. Booth's Report contains inconsistencies with regard to what actually happened. For instance, the Report does not indicate how the hidden compartment was found, the length of time to discover the hidden compartment and reach the contents therein, and the fact that Cpl. Booth searched the vehicle for approximately five (5) minutes before Sgt. Desormeaux arrived to aid in the search. In other words, Munoz complains that his version of the events relayed to defense counsel are inconsistent with

---

[16] "[S]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Wren v. United States,* 517 U.S. 806, 813 (1996).
[17] Doc. 92, p. 12.
[18] *Id.*
[19] Reply, Doc. 97, p. 5.

the Report made by Cpl. Booth. The Court finds no merit to Munoz's complaints of inconsistencies as they are not relevant to the issues raised by Munoz. The Stipulated Factual Basis which Munoz confirmed by his signature and re-confirmed in open court admit to the possession of the methamphetamine and the intent to distribute.

Munoz signed a written consent to search which Cpl. Booth reported Munoz read before he signed. In his Stipulated Factual Basis, signed by Munoz and confirmed under oath before the Court, Munoz stated that "Booth produced a search and seizure form and asked Munoz to read the form and sign it at the bottom. The defendant complied, signed the form, and granted Booth permission to search the Honda."[20] "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Thus, as argued by the Government, Munoz has failed to provide factual support for the alleged deceit in obtaining the consent to search.

Next, Munoz complains that the search of his vehicle into the hidden compartment went beyond his consent. Munoz contends that his retained counsel was ineffective because he failed to research cases that were "directly on point."[21] Munoz argues that had his counsel done the research, he would have filed a motion to suppress due to the search going beyond Munoz's consent. To buttress his argument, Munoz cites several cases he contends are directly on point with regard to the alleged unreasonable search of his vehicle. Munoz remarks that had his attorney properly researched the caselaw, he would have discovered these cases to support a motion to suppress.

---

[20] Rec. 50-2, p.4.
[21] *Id.* p. 14.

Munoz cites *United States v. Osage*, 235 F.3d 518 (10th Cir. 2000), wherein the Tenth Circuit reversed the lower court's ruling that denied a motion to suppress. In the *Osage* case, officers obtained a verbal consent to search the briefcase of a train passenger. Inside the briefcase were four cans of tamales in gravy. The officers shook the cans and noted that one of the cans responded differently when shaken. It appeared as if it was filled with sand, unlike the other cans. They also observed that the label had been tampered with—possibly re-glued. Upon opening the can, the officers discovered a plastic bag containing methamphetamine.

The Tenth Circuit concluded that the search went beyond the scope of the consent to search, holding that before an officer may actually destroy or render completely useless a container which would otherwise be within the scope of a permissive search, the officer must obtain explicit authorization or have some other lawful basis upon which to proceed. *Osage,* at 522.

Munoz explains that the officers took approximately 20 to 25 minutes to initially search his vehicle. They dismantled the door panels and found nothing. The officers then dismantled the center console which Munoz asserts required the officers to pull all the plastic off the center console, tear up a glued down rug, remove the insulation, and hotwire the trap door. The Court finds that the *Osage* case is factually distinct from the instant suit. There is no evidence that the hidden compartment was destroyed; it was only hotwired to be opened.

Munoz then cites *United States v. Ibarra,* 948 F.2d 903 (1992),[22] to support his position that the search was beyond his consent. In *Ibarra,* due to a tip regarding illegal drug activity of co-defendants which led to their arrests, police officers went to a house where Defendant Chambers resided. Chambers allowed the officers to enter the home and he verbally consented to a search of the house and garage for money laundering activity. Chambers refused to sign a consent to search form because he did not own the house.

The house consisted of a bedroom with a closet, a kitchen, a living room, a bathroom, and an attic. The officers found evidence of money laundering in the kitchen and a gun in the bedroom upon the initial search of the house. Observing that the house had an attic, officers discovered an entrance to the attic which had been boarded up. Using the handle of a sledgehammer, the officers gained entrance to the attic where they found $1,000,000 in cash, ledgers, and a money counting machine.

Chambers moved to suppress the evidence. Finding that the police structurally dismantled the attic entrance,[23] the district court granted the motion and subsequently excluded the evidence. The United States appealed the ruling to the Fifth Circuit who reversed, finding no Fourth Amendment violation. The Fifth Circuit reasoned that removal of such a barrier does not constitute the type of brutal conduct that implicates the Due Process Clause. *Ibarra* at 906. The court noted that the police did not alter the frame of the house; they merely removed a barrier blocking a visible, pre-existing passageway. In other

---

[22] *Affirmed by operation of law,* 965 F.2d 1354 (5th Cir. 1992) (an en banc Court of Appeals in an equally divided opinion).
[23] One officer testified that he was able to see what appeared to be a bag through the cracks of the boards. *Ibarra*, at 906.

words, the Fifth Circuit found that the consent to search extended to the "intentionally' boarded up attic, citing *United States v. Arteaga*, 807 F.2d 424, 426 (5th Cir. 1986) (The Due Process Clause is violated only in the rarest and most outrageous circumstances, those which shock our universal sense of justice); *United States v. Yater*, 756 F.2d 1058, 1066 (5th Cir.), *cert. denied,* 474 U.S. 901, 106 S.Ct. 225 (1985). See also *United States v. Ross,* 456 U.S. 798, 19-21, 102 S.Ct. 2157, 2170-71, (1982)("[A] lawful search extends to the entire area in which an object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search.") Munoz's reliance on this case is, at best, misplaced as it actually supports the Government's position that the search was reasonable and therefore lawful.

The Government relies on *United States v. Mendoza-Gonzalez*, 318 F.3d 663, 667 (5th Cir. 2003) wherein the Fifth Circuit found that when a defendant consents to a search of a vehicle, law enforcement officials are not required to separately request permission to search each container within a vehicle for which they have received consent to search, citing *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801 1803-04, (1991). The Fifth Circuit reasoned that the defendant did not place any explicit limitations in his response to their general request to search, expressly noting that "the defendant, as the individual 'knowing the contents of the vehicle,' has the 'responsibility to limit the scope of the consent.'" *United States v. McSween,* 53 F.3d 684, 688 (5th Cir. 1995) (quoting *United States v. Rich,* 992 F.2d 502, 505 (5th Cir. 1993).

In *McSween*, the Fifth Circuit held that, "a failure to object to the breadth of the search is properly considered an indication that the search was within the scope of the

14

initial consent." *McSween,* 53 F.3d at 688. In *United States v. Garcia*, 604 F.3d 186, 190 (5th Cir. 2010), the court, citing *Mendoza-Gonzales,* concluded that officers had not violated the scope of a defendant's general consent when they used tools to remove speaker covers inside a vehicle to locate suspected contraband. In *Garcia*, Texas Department of Public Safety ("TDPS") officers searched Garcia's commercial truck while performing inspections at a weigh station. Officers became suspicious when Garcia appeared "overly friendly" and cooperative when told he had been selected for a more thorough "level two" inspection. The inspection of Garcia's paper work gave the officers cause for concern, specifically, the eighteen-hour delay between Garcia's pick-up of tomatoes and his commencement to transport the shipment. Because the load was perishable, it would have required continuous refrigeration, and Garcia gave no explanation for the delay. Other entries to Garcia's logbook also created suspicion.

The officers asked Garcia if he was carrying anything illegal to which he responded "no." Garcia gave the officers permission to search the truck and trailer. Noticing fresh tool marks on the screws securing the stereo speakers and finding a toolkit in the cab of the truck which fit the screw heads, the officers used the tools in the toolkit to remove the speaker covers where they discovered nearly 30 kilograms of cocaine. Garcia moved to suppress the evidence which was denied by the district court and affirmed by the Fifth Circuit.

Garcia argued that the officers exceeded the scope of his consent to search. The Fifth Circuit again reasoned that where an officer does not express the object of the search, the searched party, who knows the content of his vehicle has the responsibility to limit the

15

scope of the search. The scope of consent is determined by objective reasonableness-what a reasonable person would have understood from the exchange between the officer and searched party—and not the subjective intent of the parties. *Jimeno*, 500 U.S. at 248.

The Government also relies on *United States v. Kim,* 27 F.3d 947 (3rd Cir. 1994), wherein the Third Circuit held that opening a sealed container of purported vegetable protein located in a piece of luggage was permissible and within the consent given to search the luggage.

The Government argues that it was objectively reasonable for Munoz's consent to include a search of a hidden compartment given the exchange between Munoz, Rodriguez and Cpl. Booth. The Government asserts that Cpl. Booth asked Munoz if any narcotics were in the vehicle; suspicion arose because of numerous inconsistencies in Munoz and Rodriquez's answers. The Government argues that a reasonable person, given that exchange, would understand that consenting to a search of the vehicle would include searching containers within the vehicle that may contain narcotics. Consequently, the Government maintains that Munoz has failed to establish that his attorney's election not to file a motion to suppress fell below an objective standard of reasonableness.

Furthermore, even if an attorney's decision was deficient in some way, Munoz cannot demonstrate prejudice, because a defendant can never establish prejudice from counsel's failure to raise a meritless objection. *Paredes v. Quarterman*, 574 F.3d 281, 291 (5th Cir. 209) ("Moreover, the failure to make a meritless objection could not have prejudiced Paredes.").

16

Munoz's complaint with respect to failing to search for cases is completely without support and is pure speculation. Fifth Circuit jurisprudence clearly supports the search conducted in this case of Munoz's vehicle. The Court further finds that the search did not go beyond the consent given by Munoz, and his defense counsel's decision not to file a motion to suppress did not fall below an objective standard of reasonableness. Furthermore, based on Fifth Circuit jurisprudence, Munoz has failed to demonstrate prejudice because the search was consensual.

*The indictment stated all of the elements of the crime charged.*

Munoz argues that his defense counsel was ineffective because he failed to file a motion to dismiss the indictment. Munoz suggests that the indictment was deficient because it did not contain all of the essential elements of the crime charged. Munoz asserts that the indictment used only a recitation of § 841(c)(1), but the elements of the crime were never specified, nor did it comply with the required *mens rea* as to the (1) chemical structure of methamphetamine of a controlled substance, and (2) that Munoz did not know that the methamphetamine drug had a substantial structure that was similar to other drugs of the Controlled Substances Act.

The Government contends that Munoz has failed to offer objective support for his conclusory statement. The Government further notes that during his guilty plea, Munoz acknowledged and confirmed that his attorney explained the charge contained in the indictment, and he personally confirmed that he understood the allegations made by the United States. Also, during his guilty plea hearing, Munoz confirmed with the Court and by signature that he understood the elements of the charged offense, as well as the

Government's burden of proving those elements. Finally, the Government argues that the indictment sufficiently states the requisite elements of the offense such that Munoz was adequately informed of the charge against him. *United States v. Goodman*, 605 F.2d 870, 885 (5th Cir. 1979) (generally examining an indictment charging a violation of 21 U.S.C. § 841, applying *Hamling v. United States,* 418 U.S. 87 (1974)).

The Court has reviewed the indictment and finds that Munoz's argument is without merit. The Court finds that the *mens rea* is met as the indictment clearly asserts that Munoz knowingly and intentionally possessed with the intent to distribute five hundred (500) grams or more of a mixture or substance containing a detectable amount of methamphetamine. Furthermore, the Elements of Offense signed by Munoz and confirmed in open Court clearly states the elements of the offense being charged in the indictment.[24] The Court finds that Munoz's claim of ineffective assistance of counsel in this regard is without merit.

*Additional forensic testing of the seized contraband was not required*

Munoz complains of ineffective assistance of counsel because his defense counsel failed to have the methamphetamine tested to see what type of methamphetamine he possessed and the percentage of methamphetamine. Munoz argues that "unless the more sophisticated "Polarized Light Test," or the "Optically Active Column Test" was performed, the Base Offense Level could not be determined. Thus, he maintains that there

---

[24] Elements of Offense, Doc. 50-3.

was a failure to investigate. It appears that Munoz is arguing that had a different method of testing been performed, it could have resulted in a lesser sentence.

The Government maintains that Munoz has failed to offer support that additional testing would have yielded a more favorable result. Specifically, Munoz does not identify or reference the type of testing used in this matter, nor does he suggest how a different testing method would have produced a lower advisory or statutory sentencing range. The Government notes that the sentencing guideline range was calculated based on the information to which Munoz had stipulated and confirmed under oath before this Court, including the nature and quantity of the methamphetamine. The Court agrees with the Government; Munoz cannot show that he was prejudiced and that a different methodology would have resulted in a lower sentencing guideline range. Furthermore, Munoz's assertions are purely speculative.

## ORDER

For the reasons set forth above, it is

**ORDERED** that the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (Doc. 92) is hereby **DENIED.**

**THUS DONE AND SIGNED** in New Orleans on this 19th day of November, 2019.

_____
**JAY C. ZAINEY**
**UNITED STATES DISTRICT JUDGE**